UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ZURICH AMERICAN INSURANCE
COMPANY,

    Plaintiff,

v.                                         Case No.  8:10-cv-383-T-30AEP

DIAMOND TITLE OF SARASOTA, INC.;
JLO PROPERTIES, LLC; MURRAY
LINDBERG,

    Defendants.
_____/

## ORDER

THIS CAUSE comes before the Court upon Plaintiff Zurich American Insurance Company's Motion for Final Summary Judgement (Dkt. 39), Defendant JLO Properties, LLC's Response in opposition (Dkt. 43), Plaintiff's reply in support of the motion. The Court, having considered the motion, response, and reply, and being otherwise advised on the premises, concludes that the motion should be denied in part.

**Background**

In January 2008, JLO Properties, LLC ("JLO") entered into a joint venture with non-party R. Craig Adams to invest in property. In early 2008, JLO gave Adams four checks totaling $734,971.75 to be used for the purchase of three parcels of real property. These checks were deposited into the escrow account of Diamond Title of Sarasota, Inc. ("Diamond Title"), which was a title agency but is now out of business. Though Adams promised that

the four checks would only be used for the purchase of the three properties, Adams arranged with Diamond Title to issue checks in excess of $450,000 from the escrow account to himself and others. None of the funds were used for the purchase of the properties.

JLO filed a six count complaint against Diamond Title and Adams in Sarasota County Circuit Court ("the JLO action"). JLO alleged conversion and fraudulent misrepresentation against Adams and breach of fiduciary duty and gross negligence against Diamond Title. JLO alleged that Diamond Title breached its duty as an escrow agent by releasing the checks, which it knew or should have known were not going to be used to purchase the three parcels of property. On February 10, 2010, the state court entered judgment after default in favor of JLO and against Diamond Title in the amount of $402,896.61.

On April 2, 2009, a criminal complaint was filed in federal court against Lisa Rotolo, the principal of Diamond Title. The complaint alleged that Rotolo was engaged in criminal activity related to the purchase of real estate, including the properties at issue in the JLO action.

Zurich American Insurance Company ("Zurich") issued a title agents, abstractors, and escrow agents errors and omissions policy to Diamond Title, which was in effect from November 9, 2007 to November 9, 2008. The policy contains the following relevant provisions:

>  I. INSURING AGREEMENT
>     A. COVERAGE
>        The Company will pay on behalf of an Insured, subject to the
>        Limit of Liability, all amounts in excess of the Deductible that
>        an Insured becomes legally obligated to pay as Damages and

>Claim Expenses because of a Claim that is both made and reported to the Company during the Policy Period or any Optional Extended Reporting Period based on an act or omission in the Insured's rendering or failing to render Professional Services for others.

***

V.  CONDITIONS

***

>C.  ASSISTANCE AND COOPERATION OF THE INSURED
>All Insureds shall cooperate with the Company, including providing all information requested by the Company regarding any Claim, and cooperating fully with the Company in the defense, investigation and settlement of any Claim. Upon the Company's request, all Insureds shall submit to examination by a representative of the Company, under oath if required. In addition, upon the Company's request, all Insureds shall attend hearings, depositions, and trials, and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and in the conduct of suits, all without charge to the Company.

VI.  Definitions

***

>E.  DAMAGES means the monetary portion of any judgment, award of settlement, provided such settlement is negotiated with the assistance and approval of the Company. Damages do not include:

***

>>12.  amount of escrow, trust, mortgage or any other kind or type of money, funds, securities, property, assets, or any negotiable instruments or documents that have been stolen, converted, commingled, embezzled, or misappropriated by any person, at any time, under any circumstances.

***

>H.  INSURED means:
>>4. any person or professional corporation who is a former partner, officer, director, stockholder or shareholder or employee of the Named Certificate Holder, but only in rendering or failing to render

> Professional Services on behalf of the Named Certificate Holder;
>
> \*\*\*
>
> Q. PROFESSIONAL SERVICES means services performed (including title opinions or title certifications), by any Insured, on behalf of the Named Certificate Holder, for others for a fee in any of the following capacities or activities:
>
> \*\*\*
>
> 4. Escrow Agent;

Zurich provided a defense to Diamond Title in the JLO action under a reservation of rights. At some point, Diamond Title presented a claim to Zurich regarding Murray Lindberg and requested Zurich investigate the claim.[1] Pursuant to the policy, Zurich attempted to investigate the claims against Diamond Title. On September 11, 2009, Rotolo was advised that her examination under oath ("EUO") would take place on October 1, 2009. In addition, sixteen categories of documents were requested.

The EUO occurred on October 12, 2009. Rotolo appeared at the EUO but invoked her Fifth Amendment privilege not to answer questions fifteen times, thereby refusing to answer any questions of substance. Rotolo refused to answer questions about the properties at issue in the JLO action and stated that she would assert her Fifth Amendment privilege with respect to all properties. She refused to answer questions about whether Diamond Title received checks from JLO or acted as an escrow agent for JLO. She refused to answer

---

[1] It is unclear from the record what the Lindberg claim is or what relation it has to this proceeding. Besides the allegation that Diamond Title presented a claim regarding Lindberg, the Third Amended Complaint simply lumps the Lindberg claim in with the other allegations. For example, paragraph 18 alleges, "In order to investigate the JLO Action and Lindberg claim, Zurich scheduled the examination under oath of Ms. Rotolo."

questions about checks written out of Diamond Title's escrow account. And she refused to answer questions about her involvement with Adams in real estate deals and whether she was involved in transactions where properties were bought and sold the same day or within a short period of time. Rotolo also failed to bring any of the requested documents to the EUO.

On October 29, 2009, Zurich's attorney sent correspondence to Rotolo providing another opportunity to answer substantive questions at an EUO and to produce the requested documents. Rotolo did not respond to the letter. Another letter was sent to Rotolo on November 16, 2009, confirming her failure to respond to the earlier letter and reserving Zurich's right to withdraw from the defense and to not indemnify Diamond Title based on her lack of cooperation. Zurich did not complete its investigation of the claims against Diamond Title.

On December 28, 2009, Zurich filed the Third Amended Complaint for Declaratory Relief in this Court. Zurich requests a declaration that it has no duty to defend or indemnify Diamond Title in the JLO action for three reasons: (1) Rotolo failed to cooperate with the examination, which was required under the policy; (2) the damages for the JLO action and the Lindberg claim are not within the scope of the policy; and (3) the policy doesn't apply to "intentional, criminal, fraudulent, malicious, or dishonest" acts. Zurich now moves for summary judgment on grounds one and two and the additional ground that Diamond Title did not render "professional services" for Adams or JLO as that term is defined in the policy.

## Summary Judgment Standard

Motions for summary judgment should only be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphasis in original). The substantive law applicable to the claimed causes of action will identify which facts are material. *Id.* Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor. *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324. The evidence must be significantly probative to support the claims. *Anderson*, 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee*

*Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *Hoffman v. Allied Corp.*, 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

## Discussion

**I.     Submission to an EUO**

Zurich moves for summary judgment arguing that they owe no duty to defend or indemnify Diamond Title under the Zurich policy due to Rotolo's refusal to cooperate with Zurich's investigation of the claims in the JLO action. The Zurich policy requires that an insured submit to an EUO when requested by Zurich. Though Rotolo appeared at her EUO, she asserted her Fifth Amendment privilege and refused to answer any substantive questions or provide the requested documentation.

Under Florida law, for an insured's failure to cooperate with an insurer's investigation to excuse an insurer from its obligations under the policy, an insurer must prove that: (1) the insured failed to cooperate; (2) the failure was material; (3) the failure caused the insurer substantial prejudice; and (4) the insurer exercised good faith and due diligence in bringing about cooperation. *Philadelphia Indem. Ins. Co. v. Kohne*, 181 Fed.Appx. 888, 891 (11th Cir. 2006). There is no dispute that Rotolo failed to fully cooperate by refusing to answer

any substantive questions.  However, issues of fact exist as to whether Rotolo's failure to fully submit to the EUO caused Zurich substantial prejudice.

Zurich asserts, simply, that it was prejudiced because it could not complete its investigation of the claims against Diamond Title.  It claims that it was unable to determine if there were additional bases upon which to contend there is no coverage.  Zurich relies solely on the affidavit of Sandy Mitchell, Claims Counsel at Zurich, in which he states, in conclusory fashion, that Zurich was prejudiced because it was "unable to complete its coverage investigation, as there may there may be additional grounds upon which there would be no coverage for the claims at issue."  Dkt. 41-1, p. 2.  However, there may have been other means by which Zurich could obtain the necessary information.  And there is no evidence that Zurich has attempted any other means of procuring information related to these claims.

In addition, although Rotolo refused to answer all of the questions at her EUO, she did testify at a trial regarding the JLO escrow transactions.  At the trial, Rotolo testified that Diamond Title served as the escrow agent for the JLO transactions and that she never attempted to contact JLO's manager for authorization to release the escrowed funds. Zurich has not shown that they were substantially prejudiced by Rotolo's failure to cooperate.  Therefore, summary judgment must be denied on this claim.

## II.     Damages Exclusion

Zurich argues that the judgment entered against Diamond Title does not constitute damages as that term is defined in the policy.  Damages are defined as "the monetary portion

of any judgment, award, or settlement." Excluded from the definition of damages in the policy is "amount of escrow, trust, ... or any other kind or type of money, funds, ... that have been stolen, converted, embezzled, or misappropriated by any person, at any time, under any circumstances." Zurich argues that Adams misappropriated the escrow funds, which led to the damages awarded to JLO. As such, those damages are excluded under the policy provision above.

In support of its argument, Zurich relies on *Chicago Title Ins. Co. v. Northland Ins. Co.*, 31 So.3d 214, 216 (Fla. Dist. Ct. App. 2010). In *Northland*, a dispute arose over the interpretation of a policy provision between a title insurer and its errors and omissions carrier. *Id.* at 215. In the underlying action in that case, a title agent released a check to an attorney to be held in escrow in satisfaction of a mortgage. *Id.* The attorney misappropriated the funds, leaving insufficient money to satisfy the mortgage. *Id.* The title insurer filed suit against the title agent, its principal, and the attorney alleging negligence and negligent supervision against the title agent and its principal, and fraud and deceit against the attorney and the title agent's principal. *Id.* The title insurer, the title agent, and the title agent's principal entered into a consent judgment finding the title agent and principal liable on counts of negligence, breach of fiduciary duty, and breach of contract. *Id.* The trial court entered summary judgment in favor of the errors and omissions carrier based upon a handling of funds exclusion which excluded coverage for "any damages arising out of the commingling, conversion, misappropriation or defalcation of funds or other property." *Id.* at 215-216, n.1. The title insurer appealed. The appellate court held that the exclusion did apply. The court

concluded, "[a]ny liability based on negligence stems from and is dependent on the misappropriation of funds by the attorney. But for the attorney's actions, [the title insurer] would have had no obligation to pay damages." *Id.* at 216.

The current action is distinguishable. Whereas in *Northland,* the damages would not have occurred but for the attorney's actions, the damages here would not have occurred but for Diamond Title's breach of fiduciary duty. The exclusion in the Zurich policy does not apply to Adams's actions regarding those funds.

However, at this stage the Court is unable to determine from the record whether Rotolo's actions regarding the escrow funds meets the misappropriation exclusion or others[2] within the Zurich policy due to the ongoing criminal case against Rotolo. The Court will therefore stay the case pending the completion of the criminal case. After the conclusion of the criminal case, Zurich may take additional discovery to prove the damages exclusion or any other exclusion in the policy applies to this case.

It is therefore ORDERED AND ADJUDGED that:

1. Plaintiff Zurich American Insurance Company's Motion for Summary Judgment (Dkt. 39) is DENIED in part. The Court defers ruling on the remaining issues pending the completion of the criminal case against Lisa R. Rotolo (8:10-cr-550-EAK-MAP).

---

[2] The policy also contains an exclusion of coverage for claims "based upon or arising out of, in whole or in part:
 A. any intentional, criminal, fraudulent, malicious or dishonest act or omission by any Insured or any Insured's partners, officers, directors, stockholders, shareholders or employees."

2. This case is STAYED pending the completion of the criminal case against Lisa R. Rotolo. The parties are directed to notify the Court within ninety (90) days after the criminal case is concluded. After that time, Plaintiff may take additional discovery regarding the application of exclusions within the policy.

3. The Clerk is directed to administratively close this case.

**DONE** and **ORDERED** in Tampa, Florida on May 17, 2011.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2010\10-cv-383.msj 39.frm