**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**


ZURICH AMERICAN INSURANCE
COMPANY,

     Plaintiff,

v.                                      Case No.  8:10-cv-383-T-30AEP

DIAMOND TITLE OF SARASOTA,
INC., JLO PROPERTIES, LLC and
MURRAY LIMBERG,

     Defendants.

_____/


## ORDER

THIS CAUSE comes before the Court upon Plaintiff Zurich American Insurance

Company's Motion for Final Summary Judgment (Dkt. # 59), Defendants Diamond Title

of Sarasota, Inc., JLO Properties, LLC, and Murray Limberg's Response (Dkt. # 62), and

the Plaintiff's Reply (Dkt. # 68).  Upon review, the Court concludes that the Plaintiff's

Motion for Final Summary Judgment should be granted.


### Background

Zurich brings this declaratory relief action seeking rescission of a title agent's errors

and omissions policy (the "Policy") issued to Diamond Title in 2007.  Lisa Rotolo was the

owner, operator, and President of Diamond Title at that time.  In 2009, Rotolo was indicted

on numerous counts of mortgage fraud, conspiracy, bank fraud, wire fraud, aiding and

abetting, and making false statements in connection with a loan application. Rotolo pled guilty to two counts of the indictment. In her plea, Rotolo admitted to conspiring to make materially false statements to FDIC-insured banks for the purpose of influencing those banks in connection with mortgage loans and to committing wire fraud affecting FDIC-insured banks and mortgage lending businesses.

Rotolo stated in the factual basis of her plea agreement that her conspiracy began around 2002 and lasted until the Spring of 2008.[1] During the conspiracy, Rotolo made materially false statements and representations on various mortgage documents including sale and purchase contracts, loan applications, and HUD-1Settlement Statements. The purpose of the fraud was to obtain loans secured by mortgages from FDIC-Insured banks and mortgage lending businesses. Examples of the false statements Rotolo made include: the sellers and purchasers in the transactions; the familial relationships between and among the parties to the transactions; the properties' actual purchase prices; the borrowers' intended use of the properties; the amount and source of the equity contributed to the purchase of the property by the borrowers; and the actual disbursements of the loan proceeds at closings.

JLO became involved with Diamond title through one of Rotolo's mortgage fraud co-conspirators, real estate agent R. Craig Adams. Adams was the high school friend of JLO's Managing Member, David Oriente. Oriente, on behalf of JLO, established with

---

[1] Rotolo's plea agreement was entered in USA v. Adams et al, Case# 8:10-cr-00550-EAK-MAP-13 in the Middle District of Florida, charging fourteen individuals with conspiracy to commit mortgage fraud related crimes.

Adams a joint venture to buy and sell distressed residential properties. Oriente arranged for checks totaling $734,971.75 to be delivered to the escrow account of Diamond Title for use in the JLO-Adams joint venture. Rotolo, acting at the request of Adams and without authorization of JLO, caused checks totaling $452,090.61 to be released to Adams and Entrust of Tampa Bay, LLC, as Custodian for the IRA account of Murray Limberg.

JLO subsequently brought suit in state court against Adams and Diamond Title. A default judgment was obtained against Adams based upon theories of conversion and fraudulent misrepresentation, but JLO has been unable to collect anything. JLO's primary claim against Diamond Title was based upon Diamond's breach of fiduciary duty as an escrow agent, having negligently released money deposited by JLO without prior authorization. Zurich now brings this action seeking to rescind its policy with Diamond Title based on material misrepresentations made in the insurance application.

## Summary Judgment Standard

Motions for summary judgment should be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Id.* at 248. The substantive law of the claimed causes of action will determine which facts are material. *Id.* All

evidence must be examined in the light most favorable to the non-movant and all inferences must be drawn in his or her favor. *Id.* at 255.

## Discussion

Zurich seeks rescission of the errors and omissions policy issued to Diamond Title on the grounds that Diamond Title misrepresented material facts in its application for insurance. Specifically, Diamond Title was asked:

> Does the Applicant or any prospective Insured know of any circumstances, acts, errors or omissions that could result in a professional liability claim against the Applicant? If "Yes", you must complete the attached claims addendum for each circumstance.

Dkt. # 53, Exhibit G, Application Question 21. Diamond Title answered "No."

In Florida, a misrepresentation in an application for insurance may prevent recovery under the policy if the misrepresentation was material to either the acceptance of risk or the hazard assumed by the insurer. Fla. Stat. § 627.409; *GRG Transp., Inc. v. Certain Underwriters at Lloyd's, London,* 896 So. 2d 922, 925 (Fla. 3d DCA 2005).

## Misrepresentation

Zurich argues that Diamond Title's response to question 21 of the Application was a misrepresentation. It contends that Rotolo, as the owner of Diamond Title, was obliged to answer "Yes" to whether she knew of circumstances which could result in professional liability claims because in 2007, when the application for insurance was filed, she was knowingly committing mortgage fraud. Rotolo admits in her plea agreement and testimony

4

given during the trial of her co-conspirators[2] that she had been committing this fraud for five years prior to the application.

The Defendants argue that the answer given to question 21 was truthful.  They assert that the question 21 inquiry was limited by its terms to acts that could result in professional liability claims and Rotolo's criminal acts do not qualify.  Defendants suggest that Rotolo's release of JLO's funds to her mortgage fraud co-conspirator was mere negligence, not a criminal act.  By classifying Rotolo's release of funds as mere negligence, the Defendants argue that their claims are covered under the Policy as professional liability claims whereas the prior criminal acts were intentional, and not subject to professional liability claims.

"Professional liability" is not defined under the Policy so the Defendants argue the meaning should come from a liability that results from "professional services," a defined term.  Section VI. Q. of the Policy defines professional services:

> PROFESSIONAL SERVICES means services performed (including title opinions or title certification), by any Insured, on behalf of the Named Certificate Holder, for others for a fee in any of the following capacities or activities: 1. Title Insurance Agent; 2. Title Abstractor; 3. Title Searcher; 4. Escrow Agent; 5. Closing Agent; 6. Notary Public; 7. Public Records Searcher (including Uniform Commercial Code searches); 8. Corporate Documents Searcher; 9. Flood Zone Certifications; or 10. Witness Closer.

Section III. A. states that the Policy shall not apply to any claim arising out of "any intentional, criminal, fraudulent, malicious or dishonest act or omission by any Insured or any Insured's partners, officers, directors, stockholders or employees."  Read together with

---

[2] Rotolo's pertinent testimony came when she testified during the trial of co-conspirators George R. Cavallo, Paula L. Hornberger, and Joel A. Streinz.  Case # 8:10-cr-550-T-18MAP, Trial Transcript, Dkt. # 1109, pp. 196-263.

Section VI. Q., Defendants argue that Rotolo's criminal conduct could not result in professional liabilities under the Policy. Under these premises, Defendants argue, the answer Rotolo gave to question 21 is true.

Defendants arguments fail. Rotolo has admitted through testimony and her plea agreement that she gave false statements in reporting the true identity of sellers and purchasers, the true purchase price, the true source of the buyer's equity, and the true disbursements at closing. These false statements are within the Policy's definition of professional services because they are the duties of a closing agent and escrow agent.

And the Court disagrees with the Defendant's assertion that criminal acts cannot result in claims for professional liability. A single act can be a basis for both professional and criminal liability. The Policy makes clear that it does not cover liability for criminal acts, even if they are properly characterized as professional liabilities. Rotolo was not relieved of her duty in the application to report acts that *could* result in a professional liability claim simply because the Policy may not have covered those acts. The Court concludes that Diamond Title's answer to question 21 of the Policy application, that it did not know of any circumstances that could result in a professional liability claim, was a misrepresentation.

Defendants next argument is that Zurich must prove Diamond Title's misrepresentation was intentional. Rescinding an insurance policy under Florida law, as a rule, does not require proof of an intentional misrepresentation. *GRG Transp., Inc. v. Certain Underwriters at Lloyd's, London*, 896 So. 2d 922, 925 (Fla. 3d DCA 2005).

However, Defendants argue this case is an exception because the parties contracted around Florida law.  Defendants point to language in the application to suggest that Zurich and Diamond Title wanted proof of intentional misrepresentation before the Policy could be rescinded: "THE DISCOVERY OF ANY FRAUD, INTENTIONAL CONCEALMENT, OR MISREPRESENTATION OF MATERIAL FACT WILL RENDER THIS POLICY, IF ISSUED, VOID AT INCEPTION."

Defendants cite *State Farm Fire & Cas. Co. v. Oliver*, 854 F.2d 416 (11th Cir. 1988) and *William Penn Life Ins. Co. of New York v. Sands*, 912 F.2d 1359 (11th Cir. 1990) in support of their contention that Zurich prove Diamond Title's misrepresentation to be intentional.  However, both cases are inapplicable to the case at bar.  In *State Farm*, the language found to contract around state law limited the insurer's basis for rescission to material facts that were "intentionally concealed or misrepresented."  *State Farm*, 854 F.2d at 418.  The language present in the policy between Zurich and Diamond Title is not so limited.  It provides that the Policy shall be void at its inception not just for fraud and intentional concealment, but also for misrepresentation of material fact.

The facts of *William Penn* are distinguishable as well.  *William Penn* concerned an insurance company that sought to rescind a life insurance policy.  *William Penn*, 912 F.2d at 1360.  The application for insurance asked whether the applicant had cancer or a blood disorder.  *Id.*  After the applicant passed away, it was found that he did in fact suffer from both conditions.  *Id.*  The District Court rescinded the policy on a motion for summary judgment but the Eleventh Circuit vacated and remanded the case.  *Id.* at 1365.  The

Eleventh Circuit found that the insured had not made an inaccurate statement in his application, an essential prerequisite to policy rescission under Florida law. *Id.* at 1362. Although the applicant's answer to the inquiry was later found to be false, the information the applicant gave in the application was qualified in the policy according to "the best of [the applicant's] knowledge and belief." *Id.* The Eleventh Circuit found the applicant's answer to be truthful because the insurer conceded that the applicant did not know he had cancer or a blood disorder at the time of the application. *Id.* at 1361. There was no such qualifier to the answers given in Diamond Title's application with Zurich. And, Rotolo was clearly on notice about potential claims stemming from her mortgage fraud conspiracy.

The Court concludes Zurich and Diamond Title did not contract around the law. Additionally, Zurich has shown that Diamond Title misrepresented itself as to whether it knew of any circumstances, acts, or errors that could result in a professional liability claim.

**Materiality**

Florida Statute § 627.409 requires misrepresentations to be "material either to the acceptance of the risk or to the hazard assumed by the insurer" to rescind an insurance policy. A misrepresentation is material if it does not enable an insurer to adequately estimate the nature of risk in determining whether to issue the policy. *Singer v. Nationwide Mut. Fire Ins. Co.,* 512 So. 2d 1125, 1128-29 (Fla. 4th DCA 1987). This analysis is based on an objective view of what is material. *Id.* at 1129. When the facts necessary to determine materiality are not in dispute, it is appropriate for the court to determine

materiality as a matter of law through a summary judgment motion.  *Fernandez v. Bankers Nat. Life Ins. Co.,* 906 F.2d 559, 566 (11th Cir. 1990).

The question before the Court is whether Zurich was adequately able to measure the nature of risk in providing insurance to Diamond Title given Zurich was uninformed that Diamond Title's President and at least one other employee had been committing numerous acts of mortgage fraud over the previous five years.  Defendants argue materiality has not been shown because Zurich did not conduct the Policy's underwriting and the affidavit of the underwriter presented to the Court does not reference underwriting guidelines.  Alternatively, the Defendants put forth that whether a material misrepresentation has occurred is a question of fact for the jury "regardless of how obviously false or material the representations may be."  *State Farm Mut. Auto. Ins. Co. v. Cockram*, 2012 WL 3155620 (M.D. Fla. 2012).

The Defendants' arguments miss the mark.  The Court does not need an underwriter or guidelines to appreciate how not knowing Rotolo and her employee had been committing mortgage fraud in excess of five years left Zurich unable to adequately estimate the nature of risk in issuing the Policy.  *Mims v. Old Line Life Ins. Co. of Am*., 46 F. Supp. 2d 1251, 1256 (M.D. Fla. 1999) ("The materiality of a misrepresentation may be shown as a matter of law because some misrepresentations are so gross that any one would know they are material.")  As previously discussed, many of these acts could have resulted in claims against the Policy.  An objective insurer may not have issued a policy at all.

Certainly a policy would not have been issued under the same terms and pricing knowing that Diamond Title was engaged in an ongoing scheme to commit mortgage fraud.

Defendants cite *Cockram* for the proposition that all questions of materiality are jury questions "regardless of how obviously false or material the representations may be." *State Farm Mut. Auto. Ins. Co. v. Cockram*, 2012 WL 3155620 (M.D. Fla. 2012). If that statement was to be applied in all insurance cases, summary judgment would never be appropriate, contrary to many cases that hold otherwise. E.g. *Fernandez v. Bankers Nat. Life Ins. Co.,* 906 F.2d 559, 566 (11th Cir. 1990) ("when the facts necessary to determine materiality are not in dispute, the trial judge appropriately may decide the question of materiality as a matter of law"); *Simmons v. Conseco Life Ins. Co.*, 170 F. Supp. 2d 1215, 1224 (M.D. Fla. 2001); *Darwin Nat. Assur. Co. v. Brinson & Brinson, Attorneys at Law, P.A.,* 2013 WL 2406154 (M.D. Fla. 2013). A closer look at *Cockram* shows the factual dispute to be inapplicable to this case. *Cockram* involved an automobile insurance policy which asked the insured whether he had been convicted of a traffic violation in the past six years. *State Farm Mut. Auto. Ins. Co. v. Cockram*, 2012 WL 3155620 (M.D. Fla. Aug. 3, 2012). At the time the insured filed his application, he was charged with an offense, but was not yet convicted. *Id*. That factual scenario is markedly different from the case at bar. The insured in *Cockram* had a colorable claim that his statement was true when he made it. Rotolo has no such argument.

The facts of this case are similar to the case of *Steadfast Ins. Co. v. Prime Title Servs., LLC*, 2008 WL 5216020 (W.D. Mich. 2008). It appears that the policy at issue in

*Prime Title* and the policy between Zurich and Diamond Title are related.  Both policies contained identical inquiries for question 21, asking the applicants if they were aware of circumstances that could give rise to a professional liability claim.  *Id.* at 3.  Prior to filing the application, Prime Title had been engaged in a scheme to misappropriate escrowed funds.  *Id.*  Instead of paying off liens with escrowed funds as it was obliged to, Prime Title used the money to make construction loans and investments.  *Id.*  The court held Prime Title's answer of "No" to question 21 was a material misrepresentation and rescinded the policy under law nearly identical to that of Florida.  *Id.* at 9.

Rotolo testified she committed the identical fraud that was the basis for rescission in *Prime Title.*  During the trial of her co-conspirators, Rotolo stated she misappropriated escrow funds.  Instead of paying off liens with mortgage proceeds as she was obligated, Rotolo wired the money to Adams so he could finish building a house.  When that house was sold, Adams was to return the funds to Diamond Title.[3]

### Conclusion

The Court concludes that Diamond Title's false response to question 21 of its application for insurance was a material misrepresentation because it did not allow Zurich to appreciate the risk of issuing the Policy.  In light of this material misrepresentation, the Policy between Diamond Title and Zurich American Insurance Company should be rescinded.

---

[3] Testimony of Lisa Rotolo.  Case # 8:10-cr-550-T-18MAP, Trial Transcript, Dkt. # 1112, pp. 45-47.

It is therefore ORDERED AND ADJUDGED that:

1.      Plaintiff's Motion for Summary Judgment (Dkt.# 59) is **GRANTED**.

2.      The Clerk is directed to enter **JUDGMENT** in favor of Plaintiff Zurich American Insurance Company and against Defendants Diamond Title of Sarasota, Inc., JLO Properties, LLC, and Murray Limberg.

3.      The Clerk is also directed to **CLOSE** this case and terminate any pending motions.

DONE AND ORDERED in Tampa, Florida, on this 4th day of December, 2013.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

S:\Odd\2010\10-cv-383 msj 59.docx

12